STATE OF MICHIGAN
COURT OF APPEALS

JODY POHLMAN,

        Plaintiff-Appellant,

v

JAMES G. POHLMAN,

        Defendant-Appellee.

UNPUBLISHED
January 30, 2020

No. 344121
Oakland Circuit Court
LC No. 2017-853588-DO

Before: MURRAY, C.J., and SAWYER and GLEICHER, JJ.

GLEICHER, J. (*dissenting*).

Our Legislature enacted MCL 600.1305 to protect victims of domestic violence during mediated divorce proceedings by mandating an evaluation of whether the dynamics of the parties' relationship may inhibit equitable, informed, and independent decision-making. The statute places on the mediator the primary obligation to determine whether any participant has been a victim of domestic violence. If the mediator learns that domestic violence may have infected a marriage, he or she must assess whether mediation nevertheless can be conducted safely, fairly, and effectively. In relevant part, the statute provides:

> (2) In a domestic relations mediation, the mediator shall make reasonable inquiry as to whether either party has a history of a coercive or violent relationship with the other party. A reasonable inquiry includes the use of the domestic violence screening protocol for mediation provided by the state court administrative office [SCAO] as directed by the supreme court.
>
> (3) A mediator shall make reasonable efforts throughout the domestic relations mediation process to screen for the presence of coercion or violence that would make mediation physically or emotionally unsafe for any participant, or that would impede the achievement of a voluntary and safe resolution of issues. [MCL 600.1305.]

This language comprehends that an equitably conducted mediation depends on a balance of power among the participants. The statute assigns to the mediator the task of maintaining that balance. In a marriage plagued by domestic violence, the victim may be unable to assert her or his needs, or may be particularly susceptible to controlling or coercive tactics. The mediator must be sensitive to that dynamic, because mediation tainted with the emotional residue of

-1-

domestic violence is inherently imbalanced. And the only way a mediator can realize that a history of domestic violence may play a role in mediation is to ask about it.

Our Supreme Court promulgated a court rule emphasizing the same principles. The rule instructs that mediators conducting divorce mediations must be both sensitive and faithful to the sentiments underlying the statute. MCR 3.216(H)(2) provides:

> The mediator must make reasonable inquiry as to whether either party has a history of a coercive or violent relationship with the other party. Throughout the mediation process, the mediator must make reasonable efforts to screen for the presence of coercion or violence that would make mediation physically or emotionally unsafe for any participant or that would impede achieving a voluntary and safe resolution of issues. A reasonable inquiry includes the use of the domestic violence screening protocol for mediators provided by [SCAO] as directed by the supreme court.

Echoing the statute, the court rule mandates that a mediator "screen for the presence of coercion or violence . . . that would impede achieving a voluntary and safe resolution of issues" at the beginning, middle, and end of the process. This makes good sense. Although mediation may yield an agreement, the goal is a *voluntary* agreement. Intimidation, coercion, and duress must play no part.

The mediator who conducted the divorce mediation in this case failed to make any inquiry regarding whether the parties had a coercive or violent relationship. According to uncontested evidence presented to the trial court by Jody Pohlman, they did. Jody insists that she signed the agreement presented to her by the mediator because she felt coerced and overwhelmed due to the conduct of the mediator and her own counsel, and duress applied by her now ex-husband before the mediation began.

In response to James Pohlman's motion to enter the divorce judgement, Jody sought an evidentiary hearing. Her answer to James's motion placed at issue the voluntariness of her agreement to the divorce settlement. Jody asserted that she was "mental[ly] vulnerab[le]" during the mediation and experienced an emotional and mental breakdown:

> Plaintiff's mental breakdown gave cause for her to be referred, by her counsel's office, for psychotherapy the day following mediation. On February 1, 2018, Ms. Pohlman made telephone contact with a clinical psychologist who, upon interacting with Plaintiff via phone, scheduled Ms. Pohlman for a psychotherapy session that same afternoon. Ms. Pohlman was crying and despondent; her speech was pressured and rapid. Dues to her mental health diagnosis she signed the agreement as an "escape" mechanism and did not enter into the agreement knowingly or understandingly but as a result of duress and/or severe stress. Her psychotherapist has opined that she was unable to reasonably understand the nature and effect of the act in which she was engaged.

Jody requested an evidentiary hearing.

The trial court rejected her request and the majority affirms, holding that the trial court "could sufficiently decide the issue of correction and duress on the basis of the evidence before it." I respectfully disagree with this conclusion. In my view, the trial court was obligated to hold a hearing to determine whether Jody was coerced into the settlement. Only by evaluating the proposed evidence in light of the statute and the court rule could the trial court make an informed decision regarding whether relief is warranted.

I rest my opinion on several different legal principles and begin with the language of the law.

The majority correctly notes that the court rule (like the statute) sets forth a mandatory proposition. A mediator "must" make a reasonable inquiry regarding whether within a marriage there is "a history of a coercive or violent relationship," and "must" continue to screen for "the presence of coercion or violence" throughout the procedure. Although the Legislature and the Supreme Court used language that brooks no exceptions, the majority brushes aside the mediator's rule violation, rationalizing that Jody "fails to provide any authority for the proposition that the mediator's failure to comply with the requirements of the court rule renders the mediation and subsequent settlement terms void." Jody provides no authority because her case presents a matter of first impression. The statute was passed in 2017 and the court rule came into being shortly thereafter. There are no cases addressing the operation of either mandate.

"It is a well-settled principle of law that courts are bound by property settlements reached through negotiations and agreement by parties to a divorce action, in the absence of fraud, duress, mutual mistake, or severe stress which prevented a party from understanding in a reasonable manner the nature and effect of the act in which she was engaged." *Keyser v Keyser*, 182 Mich App 268, 269-270; 451 NW2d 587 (1990). MCL 600.1035 and MCR 3.216(H)(2) represent legislative and judicial recognition that victims of domestic violence may be subject to pressures emanating from the marital relationship that cloud judgment or weaken resolve. Like *Miranda*[1] warnings, the current statute and court rule are prophylactic measures intended to level the playing field. Requiring a mediator to inquire about domestic violence before commencing mediation affords an opportunity for practical reinforcement of the principles underlying these remedial provisions.

In my view, the remedy for a mediator's failure to follow the court rule must depend on a careful, detailed assessment of the facts. Jody claims that she signed the agreement under duress. "The question as to what constitutes duress is a matter of law, but whether duress exists in a particular case is a question of fact." *Lafayette Dramatic Prods, Inc v Ferentz*, 305 Mich 193, 216; 9 NW2d 57 (1943). Absent an evidentiary hearing, a court has too little to go on to shape a remedy for the mediator's violation of the statute and court rule, or to determine whether a remedy is necessary. Jody has presented facts that warrant further inquiry and development. Jody and James Pohlman were married for almost 29 years. According to a psychologist who

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

evaluated Jody after the mediation, James was controlling and emotionally abusive. The psychologist's report describes that after several years of marriage, James

> did not allow her to continue to work and kept her from doing that by not giving her access to a vehicle . . . . [B]efore their 10-year anniversary he came into the kitchen with a gun in his waist band and physically attacked her. During the trauma assessment Ms. Pohlman state[d] that she feared James [Pohlman] was "going to kill her that night." Ms. Pohlman states that her husband told her on several occasions that "without him she would work [for] McDonald's and have nothing." She stated that on multiple occasions her husband was sexually aggressive and forced her to have sexual relations against her will.

According to Jody, James's efforts to control her continued even after divorce proceedings began. Discovery was frustrated by James's refusal to sit for a deposition and to provide certain credit statements. His successful stalling of discovery required Jody to dismiss the first divorce action and to refile it. The gamesmanship continued. James also failed to pay status quo expenses including temporary spousal support, health insurance premiums, and Jody's car payment.

Jody's counsel filed a motion to hold James in contempt based on some of this conduct. The motion was scheduled to be heard on the morning of the mediation but according to Jody, her counsel never appeared to argue it. Counsel did appear at the mediation, which began at 1:00 p.m. and continued until 7:00 p.m. During that time, Jody avers, the mediator never inquired regarding domestic violence.

At the end of the process, Jody was presented with a settlement agreement. According to her affidavit, she was tired and hungry and wished to review the agreement with her co-counsel, who had not attended the mediation. During a 35-minute encounter with the mediator and her lawyer, Jody claims that she was told that she could not leave until she signed the agreement. She signed under duress, she contends. The next day, Jody sought to rescind the agreement.

After a final order was entered in the trial court denying Jody relief from the divorce judgment, James submitted an affidavit attesting that Jody's recitation of the mediation events was accurate. Although my colleagues voted against expanding the record to include James's affidavit, I believe it contains evidence that must be considered before a reasoned decision can be made regarding the appellate issues that Jody presents. In relevant part, James averred regarding the mediation:

> 7. Upon arrival, my attorney, Mark Bank, described what was to occur during the process. In addition to any procedural description, Mr. Bank stated the following:
>
> a. "it's all arranged with your wife's attorney and the mediator";
>
> b. "they are going to beat the shit out of your wife";
>
> c. "they're not going to let her leave without signing the agreement";
>
> e. "she won't find another attorney"

-4-

8.  No meaningful mediation took place on this date, or any subsequent date, regarding any divorce action.

The majority strenuously resists the notion that these facts should be brought to light, asserting that Jody's failure to create a factual record in the trial court forecloses both our review of the evidence or the trial court's obligation to consider it.  Jody asked for an evidentiary hearing and her motion was denied.  She need have done nothing more to preserve her request to present facts supporting her claim of duress.  And it should go without saying that appellate courts frequently grant motions to expand the record in cases similar to this one, arising from claims of structural irregularities during the trial court proceedings that may have rendered a participant's actions involuntary.  See *People v McJunkin*, ___ Mich ___; ___ NW2d ___ (Docket No. 158578, entered December 13, 2019); *People v Smith*, 407 Mich 906; 289 NW2d 928 (1979).  Jody has raised an issue of first impression and has coupled it with an affidavit raising a troubling description of a mediation process that not only violated the statute and the court rule, but offended basic notions of decency.  James Pohlman has filed no objection to expanding the record.  The Legislature and our Supreme Court have mandated effective screening for domestic violence, deeming it essential to an equitable mediation process.  I can think of no better reasons for exercising our discretionary power to expand our record and to call upon the trial court to conduct a fuller investigation of a process that indisputably violated the rules.

The majority further insists that "[b]ecause [Jody] has not asserted or demonstrated that she was prejudiced by the mediator's failure to screen for domestic violence during mediation, any noncompliance with MCR 3.216(H)(2) was harmless."  Respectfully, I question whether this Court should declare the mediator's violation of the law "harmless" absent full consideration of the facts.  Jody's preliminary showing, combined with James's affidavit and the State Court Administrator's guidelines for domestic violence screening, suggest that the mediator's error was not harmless.

In 2014, before the enactment of MCL 600.1035, the SCAO Office of Dispute Resolution published a "Domestic Violence Screening Protocol for Mediators of Domestic Relations Conflicts."  The protocol describes its purpose, addresses "[w]hy mediating cases involving domestic violence is problematic," and sets forth a "[p]resumption against mediation if domestic violence exists", SCAO Office of Dispute Resolution, *Domestic Violence Screening Protocol for Mediators of Domestic Relations Conflicts* (June 2014), p 2:

> Cases in which domestic violence is present are presumed inappropriate for mediation.  This presumption can be overcome, but only if the abused party desires to participate in mediation and the circumstances of the individual case indicate that mediation will be a safe, effective tool for all concerned.

> The decision whether to order, initiate or continue mediation despite a presumption against mediation should be made on a case-by-case basis.  The most important factor to consider in deciding whether to proceed with mediation is whether the abused party wants to mediate.  Mediation should not proceed if the abused party does not want to participate.  Other factors to consider are:

a. Ability to negotiate for oneself.

b. Physical safety of the mediation process for all concerned.

c. Ability to reach a voluntary, uncoerced agreement.

d. Ability of the mediator to manage a case involving domestic violence.

e. Likelihood that the abuser will use mediation to discover information that can later be used against the abused party, or to otherwise manipulate court processes.

*Parties should be fully and regularly informed that continuing the mediation is a voluntary process and that they may withdraw for any reason.* [*Id.* at 6 (emphasis added).]

When there is a background of domestic violence, the reasons for a presumption against mediation do not magically evaporate because the parties use "shuttle diplomacy." That method may help diffuse immediate tensions, but it cannot undo years of manipulation and mistreatment.

The circumstances surrounding mediation as described by both Jody and James reflect that the process was coercive and violent. Forcing someone to stay in a room until she signs a document is a form of abuse. I recognize that the behaviors of the mediator and counsel do not necessarily provide Jody with grounds to disavow the settlement agreement. Here, however, James's averments suggest a coordinated effort in which he participated to overcome Jody's will. If proven, I cannot envision why this concert of action would be legally insufficient to invalidate the agreement. Further, I suggest that the evidence may show that had screening been done and Jody's status monitored throughout the process as required by the court rule, the mediation procedure may have terminated before she signed the agreement.

MCL 600.1035 and MCR 3.216(H)(2) promote a special, cautious approach to mediation when a history of domestic violence is acknowledged. Encouraging a trial court to rubber stamp a mediated agreement that may have been obtained in flagrant contravention of the law signals that the law is but a trifle. I would remand for an evidentiary hearing and a full assessment of whether the settlement was voluntary.

/s/ Elizabeth L. Gleicher

-6-